UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

206 Golden, LLC,                                Case No.: 8:21-bk-04780-CPM
dba The Crossroads,                             Chapter 7

                    Debtor.
_____/

### JOINT MOTION TO APPROVE COMPROMISE WITH LITIGATION PARTIES

<div style="border:1px solid">

NOTICE OF OPPORTUNITY TO
OBJECT AND REQUEST FOR HEARING

If you object to the relief requested in this paper you must file a response with the Clerk of Court at Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Suite 555, Tampa, FL 33602, within 21 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

</div>

Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and other applicable law, Douglas N. Menchise, as Chapter 7 Trustee ("Trustee"); Karl E. "KC" Cross ("Cross"); Eagle Healthcare, LLC, Senior Care CF, LLC, Payroll Processing & Personnel, LLC, T K Practitioners, LLC, N969KT, LLC, and Volunteer Properties of Davenport, LLC (collectively, the "Cross Entities"); American Express Company and American Express National Bank (collectively, "American Express"); and Center for Aging and Rehabilitation of Davenport, Inc. ("CARD"); by

and through their respective undersigned counsel, hereby move for entry of an Order approving a compromise to resolve the outstanding adversary proceedings brought by the Trustee against Cross, the Cross Entities, American Express, and CARD, as further detailed herein.  In support, the Parties state as follows:

<div align="center">

**BACKGROUND**

</div>

1.      On or about September 17, 2021 (the "Petition Date"), 206 Golden, LLC, d/b/a The Crossroads ("Debtor"), filed a voluntary petition under Chapter 11, Subchapter V of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida. [ECF No. 1].

2.      According to its Chapter 11 Case Management Summary, the Debtor operated a skilled nursing facility located at 206 West Orange Street, Davenport, FL 33837 (the "Facility") until it purportedly ceased operations on or about May 1, 2021. [ECF No. 9].

3.      On October 15, 2021, the above-captioned case was converted from Chapter 11 to Chapter 7. [ECF Nos. 44, 45]. Thereafter, the Trustee was appointed as Chapter 7 trustee, and remains the duly appointed and acting Chapter 7 trustee of the estate of the Debtor.  [ECF No. 45].

4.      In this case and its related adversary proceedings, the Trustee has alleged that the Debtor was part of a larger operating entity that was and remains owned and controlled by Cross, including but not limited to the Cross Entities. The Trustee alleges that when the Debtor was exposed to potential personal injury liability, the Debtor purported to transfer (at the behest of Cross) its operations and all personal property to CARD for no consideration.  Thus, one day the nursing home facility was operated by the Debtor, and the next it was operated by CARD, albeit with a continuity of management, personnel, physical location, assets, and general business operations.

5.      Arising out of these allegations, the Trustee filed three adversary proceedings. First, as against American Express, Adv. No. 8:22-ap-00102-CPM (the "Amex AP"), in which the Trustee seeks to avoid and recover certain transfers by the Debtor to American Express related to credit cards issues by American Express to Cross and/or on which Cross was personally liable.

6.      Next, as against CARD, Adv. No. 8:22-ap-00107-CPM, in which the Trustee asserted claims for substantive consolidation, successor liability, and other Chapter 5 causes of action.

7.      Finally, as against Cross and the Cross Entities, Adv. No. No. 8:22-ap-00116-CPM, in which the Trustee asserted claims for alter ego and other Chapter 5 causes of action.

8.      All Defendants in the respective adversaries have denied the allegations against them, asserted (or planned to assert) significant affirmative defenses, and otherwise denied any liability.

9.      In a good faith effort to avoid the costs and uncertainty attendant to litigation, the Parties mediated the Trustee's asserted claims, both pre- and post-suit. As a result of the mediation and related exchanges of information and documents, the Parties have agreed that it is in their best interests to amicably resolve all claims and defenses that were or could have been raised by the Trustee against Cross, the Cross Entities, American Express, and CARD.

10.      Attached hereto as **Exhibit 1** is the Parties' Settlement Agreement.

## TERMS OF SETTLEMENT

11.     To resolve all issues between them, the Parties have agreed upon the following compromise.  To the extent there is any conflict between the terms summarized herein and the Settlement Agreement attached as **Exhibit 1,** the Settlement Agreement shall control.

12.     The following monetary consideration will be paid to the Trustee for a total settlement amount of $700,000.00:

    a.   American Express shall pay to the Trustee $125,000.00;

    b.   Cross and/or the Cross Entities shall pay or cause to be paid to the Trustee the sum of $233,646.52; and

    c.   The Trustee shall retain the $341,353.48 currently in the possession of the Trustee, with CARD waiving any asserted rights to such funds.

13.     As between the Trustee and American Express, the parties have agreed to generally release each other for all matters pre- and post-petition that were or could have been raised in the pending adversary proceedings.

14.     As between the Trustee and CARD, the parties have agreed to generally release each other for all matters pre- and post-petition that were or could have been raised in the pending adversary proceedings, including CARD's waiver of any interest in the non-trust funds currently held by the Trustee.  Further, CARD agrees to withdraw any pending motions or contested matters.

15.     As between the Trustee and Cross and the Cross Entities, the parties have agreed to generally release each other for all matters pre- and post-petition that were or could have been raised in the pending adversary proceedings, including withdrawal of any proofs of claim filed by Cross or the Cross Entities.

## BASIS FOR RELIEF

16.    Pursuant to Rule 9019 of the Federal Rule of Bankruptcy Procedure, approval of a

compromise is within the sound discretion of this Court. *In re Foster Mortg. Corp.*, 68 F.3d 914,

917 (5th Cir. 1995).   Specifically, Bankruptcy Rule 9019 provides:

> **Compromise.**  On motion by the trustee and after notice and a hearing, the court
> may approve a compromise or settlement. Notice shall be given to creditors, the
> United States trustee, the debtor, and indenture trustees as provided in Rule 2002
> and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019.

17.    The standard for approval of a compromise settlement is whether the proposed

settlement is "fair and equitable" and "in the best interest of the estate." *Protective Comm. for*

*Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Thus,

"when a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must

consider:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be
> encountered in the matter of collection; (c) the complexity of the litigation involved,
> and the expense, inconvenience and delay necessarily attending it; (d) the
> paramount interest of the creditors and a proper deference to their reasonable views
> in the premises.

*In re Justice Oaks II, Ltd.*, 898 F. 2d 1544, 1549 (11th Cir. 1990).

18.    Moreover, to approve a compromise, the Court need not determine which party

would ultimately prevail, but only that the matter was open to reasonable doubt. *Id.* "It is generally

recognized that the law favors settlement of disputes over litigation for litigation sake." *In re*

*Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).

19.    In *In re Soderstrom*, 477 B.R. 249, 252 (Bankr. M.D. Fla. 2012), this Court stated:

> A trustee must make a comprehensive examination of the underlying facts and
> prove a settlement agreement is reasonably beneficial to an estate.  A court is not
> required to decide the merits of each claim or hold a 'mini trial' of the underlying
> litigation but must have enough information to evaluate the reasonableness of a
> trustee's proposed settlement.  When the potential augmentation of a bankruptcy

estate 'involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously, and an inquiring court must accord him wide latitude in deciding whether to settle. . . . A settlement necessarily vitiates the need to decide the merits of each underlying argument to promote judicial efficiency and foster cooperation among the parties in resolving complex cases such as this.

20.    "[T]he Bankruptcy court has broad discretion to approve a compromise." *In re Bicoastal Corp.*, 164 B.R. at 1016.  Settlements or compromises should be approved unless they "fall below the lowest point in the range of reasonableness." *Id.*  "[B]ankruptcy court[s] [are] not required to rule on the merits, and must look only to the probabilities." *Romagosa v. Thomas (In re Van Diepen, P.A.)*, 236 Fed. Appx. 498, 504 (11th Cir. 2007).

21.    "The question presented … is not whether the settlement on the terms proposed is objectively better for the [e]state than the litigation alternative, nor is the question whether this [c]ourt or the [o]bjecting [p]arties would have made a different decision under the same circumstances – the question is whether the [t]rustee's decision was reasonable." *In re Harbour East Development, Ltd*., 2012 WL 1851015, at * 1-2 (Bankr. S.D. Fla. May 21, 2012) (citations omitted).

22.    Here, the compromise outlined in this Motion and the attached Settlement Agreement, which was negotiated at arm's length after multiple days of mediation, is fair and equitable and in the best interest of the bankruptcy estate.

23.    As the dockets in the main case and adversary proceedings demonstrate, the claims asserted by the Trustee, and defenses presented by Cross, the Cross Entities, CARD, and American Express, are likely to be fact-intensive disputes, necessitating protracted litigation on contentious issues, intensive discovery, and a low likelihood of summary adjudication, ultimately requiring a trial with many unknowns and potential outcomes. Additionally, the Trustee anticipates the potential of post-judgment or interlocutory appeals.

24.    The settlement set forth herein is in the best interests of creditors because it avoids protracted litigation that could consume and deplete the estate's assets, resources, and potential recoveries.

25.    The Parties believe it is in their best interests to enter into an agreement to resolve through this compromise any and all potential issues between them. The Parties submit that, in their business judgment, the terms the settlement are overwhelmingly in the best interest of this Estate and its creditors.

**WHEREFORE**, the Parties respectfully request this Court enter an order that (i) grants this Motion; (ii) approves the terms of settlement; (iii) authorizes the parties to consummate the settlement; and (iv) awards such other and further relief as this Court deems necessary and proper.

Respectfully Submitted,

SHUMAKER, LOOP & KENDRICK, LLP

By: /s/ Steven M Berman
    **Steven M. Berman, Esq.**
    Florida Bar No.: 856290
    sberman@shumaker.com
    101 E. Kennedy Blvd., Suite 2800
    Tampa, Florida 33602
    Phone (813) 229-7600

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 21, 2023, the foregoing was served via CM/ECF notice to all counsel of record and by U.S. Mail to

**206 Golden, LLC**
6511 Nova Drive, Ste 168
Fort Lauderdale, FL 33317

**Robert P Charbonneau**
Agentis PLLC
55 Alhambra Plaza, Suite 800
Coral Gables, FL 33134

**J Steven Wilkes**
Office of United States Trustee
501 East Polk Street
Tampa, FL 33602

**United States Trustee - TPA**
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602

All Creditors on the attached matrix

/s/ Steven M Berman
**Attorney**

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of this __20th__ day of March, 2023, by, between and among (i) Douglas N. Menchise, as Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of 206 Golden LLC d/b/a The Crossroads (the "Debtor"), (ii) American Express Company ("AEC") and American Express National Bank ("AENB"; and AEC and AENB collectively, "AmEx"), (iii) Center for Aging and Rehabilitation Davenport, Inc. ("CARD"); and Payroll Processing & Personnel LLC ("Payroll"), T K Practitioners, LLC ("TK"), Volunteer Properties of Davenport, LLC ("Volunteer"), Senior Care CF, LLC ("Senior Care"), N969KT, LLC ("N969KT"), Eagle Healthcare, LLC ("Eagle") and Karl E. "KC" Cross. Payroll, TK, Volunteer, N969KT, Eagle, and KC Cross are collectively referred to as the "Cross Parties." The Trustee, AmEx, CARD, and Cross Parties are also referred to below individually as a "Party" or collectively as the "Parties."

## WHEREAS:

A.      WHEREAS, on September 17, 2021, the Debtor filed its voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), initiating case number 8:21-bk-04780 (the "Bankruptcy Case") in the Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court").

B.      WHEREAS, on October 15, 2021, the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code.

C.      WHEREAS, also on October 15, 2021, the Trustee was duly appointed as the Chapter 7 Trustee in the Bankruptcy Case.

D.      WHEREAS, on May 24, 2022, the Trustee filed a Complaint against AmEx in the Bankruptcy Case seeking to avoid and recover alleged fraudulent transfers pursuant to, *inter alia*, 11 U.S.C. §§ 544, 548 and 550, initiating case number 8:22-ap-00102 (the "AmEx Adversary Proceeding").

E.      WHEREAS, on June 24, 2022, AmEx filed its Answer and Affirmative Defenses in the AmEx Adversary Proceeding, in which AmEx generally denied the allegations in the Complaint and raised certain defenses thereto.

F.      WHEREAS, AmEx has asserted various factual and legal defenses and denies liability for the Trustee's claims against it.

G.      WHEREAS, on June 6, 2022, the Trustee filed a complaint against CARD instituting the adversary proceeding styled *Menchise v. Center for Aging and Rehabilitation of Davenport, Inc. d/b/a Davenport Care Center*, Adv. Pro. No.: 8:22-00107-CPM, wherein the Trustee is seeking to avoid and recover various transfers pursuant to 11 U.S.C. §§ 544, 547, 548, and 550 and other applicable law, and for other forms of equitable relief (the "CARD Adversary").

H.      WHEREAS, CARD filed a motion to dismiss the adversary proceeding which is set for hearing on March 22, 2023.

1

I.      WHEREAS, on June 6, 2022, the Trustee filed a complaint against the Cross Parties instituting the adversary proceeding styled *Menchise v. Karl E. "KC" Cross et al.*, Adv. Pro. No.: 8:22-00116-CPM, wherein the Trustee is seeking to avoid and recover various transfers pursuant to 11 U.S.C. §§ 544, 547, 548, and 550 and other applicable law, for other forms of equitable relief including substantive consolidation, and for certain declaratory relief ("Cross Parties Adversary").

J.      WHEREAS, the Cross Parties have not filed a response to the Cross Parties Adversary because of the parties engaging in  the settlement negotiations that led to this Agreement.

K.      WHEREAS, the Trustee, AmEx, CARD, and the Cross Parties having formally and informally exchanged documents and information, and evaluated the strengths and weaknesses of their respective claims and defenses, and without any admissions as to their respective positions, are desirous of compromising and settling the Trustee's claims against AmEx, CARD, and the Cross Parties in their entirety, in order to avoid the expenses and risks of litigation, on the following terms and conditions.

**NOW THEREFORE**, in consideration of the premises and mutual promises set forth below and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.      **Effective Date**. Unless otherwise stated, the obligations, representations, warranted stated in this Settlement Agreement shall become effective upon the entry of a final order by the Bankruptcy Court approving this Agreement or, if there is an appeal, upon the entry of a final order with respect to the appeal (the "Effective Date").

2.      **Settlement Payment.**

     a.    The Trustee shall receive a total of $700,000.00, paid as follows:

         i.    AENB agrees to pay to "Shumaker, Loop & Kendrick, LLP" (the "Payee"), counsel for the Trustee, the sum of One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,000.00) (the "AmEx Settlement Payment") within thirty (30) days of AmEx's counsel's receipt of (i) the fully executed Agreement, (ii) an IRS Form W-9 completed by the Payee; and (iii) an Electronic Deposit Authorization Form, which is attached hereto as Exhibit A, completed and signed by the Payee

         ii.    The Trustee shall retain the $341,353.48 currently in the possession of the Trustee, with CARD and all Parties other than the Trustee waiving any interest in such funds..

         iii.    CARD and the Cross Parties, jointly and severally, and in any proportion to which each of those parties agree, shall pay $233,646.52 (the "CARD/Cross Settlement Payment") to the Trustee within thirty (30) days of the Effective Date.

3.     **Court Approval of Settlement.**  This Agreement is conditioned upon and shall not become effective unless and until it is approved by the Bankruptcy Court.  If the Trustee receives either Settlement Payment prior to the Effective Date, the Trustee shall hold that Settlement Payment in trust pending the Effective Date. In the event that the Bankruptcy Court does not approve this Agreement, or there is a final, non-appealable order of an appellate court reversing an order of the Bankruptcy Court approving this Agreement, (i) the Trustee shall promptly return the respective Settlement Payments to AmEx, CARD and/or Cross and (ii) this Agreement shall be null and void, with the Parties returning to their original respective positions with no rights waived or released.

4.     **The Trustee's Release of AmEx.**  Except for the obligations contained in this Agreement, and upon receipt of the AmEx Settlement Payment and occurrence of the Effective Date, the Trustee, on behalf of himself in his capacity as Trustee of the Debtor's bankruptcy estate, releases and discharges AmEx and its affiliates, including, without limitation, American Express Travel Related Services Company, Inc. (the "AmEx Affiliates"), and their respective officers, directors, agents, employees, and attorneys (collectively, the "AmEx Parties"), from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities, of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, arising from or relating to any claims asserted or that could have been asserted against AmEx or the other AmEx Parties by the Trustee related in any manner to the Debtor or the Bankruptcy Case at any time prior to the execution of this Agreement, including, without limitation, any claims under Chapter 5 of the Bankruptcy Code or comparable state statutes. The Trustee acknowledges that he or his attorneys may hereafter discover facts different from or in addition to the facts that he now knows or believes to be true as to the subject matter of this Agreement, but that it is his intention to hereby fully and finally release the claims set forth in this paragraph, notwithstanding the discovery of any such different or additional facts.

5.     **AmEx's Release of the Trustee and Estate.**  Except for the obligations contained in this Agreement, and upon delivery of the AmEx Settlement Payment and occurrence of the Effective Date, AmEx, on behalf of itself and the AmEx Affiliates, releases and discharges the Trustee and the Debtor's bankruptcy estate and the Debtor's agents, employees and attorneys (collectively, the "Trustee Released Parties"), from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any claims asserted or that could have been asserted against the Trustee Released Parties by AmEx or the AmEx Affiliates related to the Debtor or the Bankruptcy Case at any time prior to the execution of this Agreement (including, without limitation, any claim for the AmEx Settlement Payment under 11 U.S.C. § 502(h)); provided, however, and other than as expressly provided in paragraph 5 of this Agreement, that this release does not extend to any contractual obligations (including charges on credit or charge cards) by any entity or individual other than the Debtor. AmEx and the AmEx Affiliates acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true as to the subject matter of this Agreement, but that it is their intention to hereby fully and finally release the claims set forth in this paragraph, notwithstanding the discovery of any such different or additional facts.

6.      **No Contribution or Indemnification.**  AmEx further agrees that neither it nor any of the AmEx Affiliates will seek contribution, indemnification or any claim whatsover for the AmEx Settlement Payment from Karl E. "KC" Cross or any other liable cardholder on the credit card accounts at issue in the AmEx Adversary Proceeding.

7.      **The Trustee's Release of CARD.**  Except for the obligations contained in this Agreement, and upon occurrence of the Effective Date and delivery of the CARD/Cross Settlement Payment, the Trustee, on behalf of himself in his capacity as Trustee of the Debtor's bankruptcy estate, releases and discharges CARD and its affiliates, and their respective officers, directors, agents, employees, attorneys, and professionals (collectively, the "CARD Parties"), from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities, of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, arising from or relating to any claims asserted or that could have been asserted against CARD or the other CARD Parties by the Trustee related in any manner to the Debtor or the Bankruptcy Case at any time prior to the execution of this Agreement, including, without limitation, any claims under Chapter 5 of the Bankruptcy Code or comparable state statutes. The Trustee acknowledges that he or his attorneys may hereafter discover facts different from or in addition to the facts that he now knows or believes to be true as to the subject matter of this Agreement, but that it is his intention to hereby fully and finally release the claims set forth in this paragraph, notwithstanding the discovery of any such different or additional facts.

8.      **CARD's Release of the Trustee and Estate.**  Except for the obligations contained in this Agreement, and upon occurrence of the Effective Date and delivery of the CARD/Cross Settlement Payment, CARD, on behalf of itself and the CARD Parties, releases and discharges the Trustee and the Debtor's bankruptcy estate and the Trustee's agents, employees, accountants, attorneys, and professionals (collectively, the "Trustee Released Parties"), from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any claims asserted or that could have been asserted against the Trustee Released Parties by CARD or the CARD Parties related to the Debtor or the Bankruptcy Case at any time prior to the execution of this Agreement (including, without limitation, any claim for the CARD/Cross Settlement Payment under 11 U.S.C. § 502(h)).  CARD and the CARD Parties acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true as to the subject matter of this Agreement, but that it is their intention to hereby fully and finally release the claims set forth in this paragraph, notwithstanding the discovery of any such different or additional facts.

9.      **The Trustee's Release of the Cross Parties**. Except for the obligations contained in this Agreement, and upon occurrence of the Effective Date and delivery of the CARD/Cross Settlement Payment, the Trustee, on behalf of himself in his capacity as Trustee of the Debtor's bankruptcy estate, releases and discharges the Cross Parties, and their respective officers, directors, agents, employees, accountants, attorneys, and other professionals (collectively, the "Cross Releasees"), from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities, of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, arising from or

relating to any claims asserted or that could have been asserted against Cross Releasees by the Trustee related in any manner to the Debtor or the Bankruptcy Case at any time prior to the execution of this Agreement, including, without limitation, any claims under Chapter 5 of the Bankruptcy Code or comparable state statutes. The Trustee acknowledges that he or his attorneys may hereafter discover facts different from or in addition to the facts that he now knows or believes to be true as to the subject matter of this Agreement, but that it is his intention to hereby fully and finally release the claims set forth in this paragraph, notwithstanding the discovery of any such different or additional facts.

10.      **Cross Parties' Release of the Trustee and Estate.** Except for the obligations contained in this Agreement, and upon occurrence of the Effective Date and delivery of the CARD/Cross Settlement Payment, the Cross Parties, releases and discharges the Trustee and the Debtor's bankruptcy estate and the Trustee's agents, employees, accountants, attorneys, and professionals (collectively, the "Trustee Released Parties"), from any and all actual or potential claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities, whether known or unknown, suspected or unsuspected, arising from or relating to any claims asserted or that could have been asserted against the Trustee Released Parties by the Cross Parties related to the Debtor or the Bankruptcy Case at any time prior to the execution of this Agreement (including, without limitation, any claim for the CARD/Cross Settlement Payment under 11 U.S.C. § 502(h)). The Cross Parties acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true as to the subject matter of this Agreement, but that it is their intention to hereby fully and finally release the claims set forth in this paragraph, notwithstanding the discovery of any such different or additional facts.

11.      **Withdrawal of Proofs of Claim, Motions and Contested Matters**. Within 14 days of the Effective Date, the Cross Parties shall withdraw all proofs of claim filed in the Bankruptcy Case, including Claim Nos. 6, 7, 8, 9 and 10, and CARD and/or the Cross Parties shall withdraw any pending motions or other contested matters in the Bankruptcy Case.

12.      **Dismissal of AmEx Adversary Proceeding.** Within 14 days of receipt of the AmEx Settlement Payment or the Effective Date, whichever is later, the Trustee shall dismiss the AmEx Adversary Proceeding, with prejudice, with each party to bear its own fees and costs.

13.      **Dismissal of CARD Adversary Proceeding.** Within 14 days of receipt of the CARD/Cross Settlement Payment or the Effective Date, whichever is later, the Trustee shall dismiss the CARD Adversary Proceeding, with prejudice, with each party to bear its own fees and costs.

14.      **Dismissal of Cross Parties Adversary Proceeding.** Within 14 days of receipt of the CARD/Cross Settlement Payment or the Effective Date, whichever is later,  the Trustee shall dismiss the Cross Parties Adversary Proceeding, with prejudice, with each party to bear its own fees and costs.

15.      **No Admission of Liability.** Nothing in this Agreement shall be construed as an admission of liability by any Party to the Agreement.

16. **Merger and Integration.** This document sets forth the entire agreement of the Parties and all prior and contemporaneous conversations, agreements, understandings, covenants, representations, and negotiations with respect to the subject matter hereof are merged herein and superseded hereby. No other agreements, covenants, representations, or warranties, express or implied, oral or written, have been made by any of the Parties with respect to the subject matter hereof.

17. **Counterparts.** This Agreement can be signed in facsimile or PDF counterparts.

18. **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to enforce and construe the terms and provisions of this Agreement.

19. **Governing Law.** This Agreement is made and entered into under the laws of the State of Florida and Title 11 of the United States Code, and shall be interpreted, applied, and enforced under those laws. The Parties hereto agree that this Agreement shall be governed by the laws of the State of Florida and Title 11 of the United States Code, and any litigation concerning this Agreement shall be held in the Bankruptcy Court.

20. **No Presumption.** There shall be no drafting inference in connection with this Agreement.

21. **Review by Counsel.** By signing this Agreement, the Parties represent that they have reviewed this Agreement with counsel or have been given an opportunity to review it with counsel and have chosen not to do so.

22. **Authority.** By signing this Agreement, the Parties represent that they have full authority to enter into this Agreement.

23. **Miscellaneous.** The Parties shall bear their respective costs, expenses, and attorneys' fees incurred in connection with this Agreement. This Agreement may be amended, modified, or otherwise changed only in a writing signed by both Parties and, if applicable, with Bankruptcy Court approval. This Agreement shall bind and inure to the benefit of the Parties hereto and their respective successors, predecessors, and assigns. The Parties agree to, on request of the other Party, to perform all acts reasonably necessary to effectuate this Agreement.

**DOUGLAS N. MENCHISE,**
**AS CHAPTER 7 TRUSTEE FOR**
**206 GOLDEN LLC d/b/a THE CROSSROADS.**


Dated: 3-14-2023

6

*In re: 206 Golden , LLC*
*Continued Signature Pages for Settlement Agreement among Trustee, CARD, and Cross Parties*


**AMERICAN EXPRESS COMPANY**

By: *Joann M. Velez*                    Dated: 3/14/23

Title: Manager & Counsel


**AMERICAN EXPRESS NATIONAL BANK**

By: *Joann M. Velez*                    Dated: 3/14/23

Title: Manger & Counsel


**PAYROLL PROCESSING & PERSONNEL, LLC**

By: _____            Dated: _____

Title: _____


**VOLUNTEER PROPERTIES OF DAVENPORT, LLC**

By: _____            Dated: _____

Title: _____


**EAGLE HEALTHCARE, LLC**

By: _____            Dated: _____

Title: _____

*In re: 206 Golden , LLC*
*Continued Signature Pages for Settlement Agreement among Trustee, CARD, and Cross Parties*

**SENIOR CARE CF, LLC**

By: _____    Dated: _____

Title: _____


**TK PRACTITIONERS, LLC**

By: _____    Dated: _____

Title: _____


**CENTER FOR AGING AND REHABILITATION OF DAVENPORT, INC. D/B/A DAVENPORT CARE CENTER**

By: _____    Dated: 3/13/2023 | 1:13 PM EDT

Title: CEO


**KARL E. "KC" CROSS**

By: _____    Dated: _____
    Karl E. "KC" Cross, individually

*In re: 206 Golden , LLC*
*Continued Signature Pages for Settlement Agreement among Trustee, CARD, and Cross Parties*

## AMERICAN EXPRESS COMPANY

By: _____     Dated: _____

Title: _____

## AMERICAN EXPRESS NATIONAL BANK

By: _____     Dated: _____

Title: _____

## PAYROLL PROCESSING & PERSONNEL, LLC

By: *kl Cross*                              Dated: 3/13/2023 | 1:02 PM EDT
F70A3799540C426...

Title: Authorized Signor

## VOLUNTEER PROPERTIES OF DAVENPORT, LLC

By: *kl Cross*                              Dated: 3/13/2023 | 1:02 PM EDT
F70A3799540C426...

Title: Authorized Signor

## EAGLE HEALTHCARE, LLC

By: *kl Cross*                              Dated: 3/13/2023 | 1:02 PM EDT
F70A3799540C426...

Title: Authorized Signor

*In re: 206 Golden , LLC*
*Continued Signature Pages for Settlement Agreement among Trustee, CARD, and Cross Parties*

**SENIOR CARE CF, LLC**

By: _____

Title: _____

Dated: 3/13/2023 | 1:02 PM EDT
_____

**TK PRACTITIONERS, LLC**

By: _____

Title: Authorized Signor
_____

Dated: 3/13/2023 | 1:02 PM EDT
_____

**CENTER FOR AGING AND REHABILITATION OF DAVENPORT, INC. D/B/A DAVENPORT CARE CENTER**

By: _____

Title: _____

Dated: _____

**KARL E. "KC" CROSS**

By: _____
Karl E. "KC" Cross, individually

Dated: 3/13/2023 | 1:02 PM EDT
_____

8



ELECTRONIC DEPOSIT AUTHORIZATION FORM

Name: _____

Address: _____

City: _____    State / Country: _____    Zip / Postal Code: _____

Contact Person: _____    Phone #:  (          ) _____

Title  / Position: _____

E-mail Address:  _____

Fax#:  (          ) _____    Tax ID # / SS #  _____

**<u>Receiving Bank / Account Details:</u>**

Account Name: _____

Financial Institution:  _____

Financial Institution Address:  _____

City: _____    State / Country: _____    Zip / Postal Code: _____

*Account #: _____    *SORT CODE: _____

*ABA Routing Number (U. S. only): _____    *BSB (Australia only): _____

*SWIFT CODE: _____    *IBAN: _____

**\*Please verify the above account and routing numbers with your Financial Institution to ensure accuracy.**

AUTHORIZATION: _____    _____
(Authorized signature only)            NAME (PLEASE PRINT)                                    TITLE

_____    _____
                        SIGNATURE                                                            DATE

EXHIBIT "A"

Label Matrix for local noticing
113A-8
Case 8:21-bk-04780-CPM
Middle District of Florida
Tampa
Tue Mar 21 10:35:11 EDT 2023

AIQ Financial, LLC
6880 PERRY CREEK ROAD NONE
Raleigh, NC 27616-8069

Arlbridge
Sat TV PO Bx 638671
Cincinnati, OH 45263-8671

Broward County Tax Collector
Governmental Center Annex
115 S. Andrews Ave
Fort Lauderdale, FL 33301-1801

Center for Aging and
Rehabilitation of Davenport,
Robert Alan Brock
100 SE 2nd Street
Miami, FL 33131-2100

Chambers of Medicine PA
8508 Alafia Hills Drive
Plant City FL 33567-3408

Charlan Brooke, Esq.
Counsel for Plaintiff
20 N Orange Avenue Ste 1600
Orlando, FL 32801-4624

Crossroads Retirement Home
206 W. Orange Street
Davenport, FL 33837-3118

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Eagle Healtcare, LLC -
c/o Scott A. Underwood
Underwood Murray, P.A.
100 N. Tampa St., Suite 2325
Tampa, FL 33602-5842

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

John A. Anthony, Esq.
Counsel for Plaintiff
20 N Orange Avenue, Ste 1600
Orlando, FL 32801-4624

Milner Documents Products
PO Box 911608
Denver CO, 80291-1608

Payroll Processing & Personnel, LLC -
c/o Scott A. Underwood
Underwood Murray, P.A.
100 N. Tampa St., Suite 2325
Tampa, FL 33602-5842

Peter Van Den Boom, Esq.
Counsel for Plaintiff
402 South Kentucky Ave
Suite 402
Lakeland, FL 33801-5336

Reliant Pro Rehab, LLC d/b/a Reliant Rehabil
c/o Heather A. DeGrave
601 Bayshore Blvd., Suite 720
Tampa, Florida 33606-2760

Rxperts Pharmacy of Tampa, Inc.
c/o Jordan C. Kaplan, Esq.
Behar Law Firm, P.A
17501 Biscayne Blvd, Ste 460
North Miami Beach, FL 33160-4806

Rxperts Pharmacy of Tampa, Inc. -
c/o Michael I. Bernstein,Esq
The Bernstein Law Firm
3050 Biscayne Blvd., Ste 403
Miami, FL 33137-4143

Senior Care CF, LLC -
c/o Scott A. Underwood
Underwood Murray, P.A.
100 N. Tampa St., Suite 2325
Tampa, FL 33602-5842

TK Practitioners, LLC -
c/o Scott A. Underwood
Underwood Murray, P.A.
100 N. Tampa St., Suite 2325
Tampa, FL 33602-5842

Tax Collector for Polk County
916 N Massachusetts Ave
Lakeland, FL 33801-1750

The Estate of Ronald Charles Lada, by and th
c/o John A. Anthony, Esquire
Anthony & Partners, LLC
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602-5318

The Estate of Ronald Charles Lada, by and th
Anthony & Partners, LLC
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602-5318

Truist Bank, Bankruptcy Section -
100-50-01-51
P.O. Box 1847
Wilson, NC 27894-1847

Volunteer Properties of Davenport, LLC -
c/o Scott A. Underwood
Underwood Murray, P.A.
100 N. Tampa St., Suite 2325
Tampa, FL 33602-5842

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

(d)The Estate of Ronald Charles Lada, by and
Anthony & Partners, LLC
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602-5318

(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF
-----------------------------------------------
Note: Entries with a '-' at the end of the
name have filed a claim in this case

End of Label Matrix
Mailable recipients    24
Bypassed recipients     3
Total                  27